UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-337 (ADM/AJB)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Petitioner )<br>)<br>v. )<br>)<br>EUGENE WASHINGTON )<br>)<br>Respondent. )<br>_____ ) | **REPORT AND RECOMMENDATION** |

The above-entitled matter came on for hearing before the undersigned Magistrate Judge on April 13, 2005, at the Federal Medical Center ("FMC") in Rochester, Minnesota. The United States petitions this Court pursuant to 18 U.S.C. § 4245 to determine the present mental condition of Respondent Eugene Washington. Petitioner seeks an Order committing Respondent to the mental health unit at FMC Rochester for appropriate custody, care and treatment. Assistant Federal Public Defender Katherine Menendez represented Respondent. Assistant United States Attorney Perry F. Sekus appeared on behalf of the United States. Respondent was present throughout the hearing.

At the hearing, Daniel J. Shine, Jr., M.D., Staff Psychiatrist at FMC Rochester, testified on behalf of the United States. Respondent testified on his behalf. The Court admitted into evidence without objection the following exhibits: Government Exhibit 1, Curriculum Vitae of Dr. Shine; and Government Exhibit 2, Mental Health Evaluation dated January 24, 2005.

The matter is before the undersigned Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Upon the following Findings of Fact and Conclusions of Law, it is recommended that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted;

2. Respondent is found to be suffering from a mental disease or defect for the treatment of which he is in need of hospitalization in a suitable psychiatric facility;

3. FMC Rochester is a suitable facility at which to treat Respondent's mental illness;

4. Respondent be committed to the custody of the United States Attorney General; and

5. The Attorney General hospitalize Respondent at FMC Rochester.

## I. APPLICABLE LAW

Under 18 U.S.C. § 4245, a prisoner who is serving time in a federal prison may not be committed to a mental hospital for care and treatment without the prisoner's consent or a court order. See 18 U.S.C. § 4245; United States v. Watson, 893 F.2d 970, 975 (8th Cir. 1990)(vacated in part on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir. 1990)). If the prisoner objects to being committed, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); United States v. Jones, 811 F.2d 444, 447 (8th Cir. 1987).

"If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4245(d). The Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Id.

In summary, the Court is required to answer three questions: "Is the Respondent suffering from a mental disease or defect? If so, is the Respondent in need of custody for care or treatment of that disease or defect? If so, is the proposed facility a suitable facility?" United States v. Horne, 955 F. Supp. 1141, 1144 (D. Minn. 1997).

## II.     APPLICATION TO RESPONDENT

### A.     Respondent is Suffering From a Mental Disease or Defect

Respondent is serving a 360-month sentence for Conspiracy to Distribute Cocaine, Use of a Communication Facility in a Felony Offense, and Possession with Intent to Distribute Cocaine, with a release date projected for July 29, 2020. Respondent was transferred from the FMC in Forth Worth, Texas to FMC Rochester on September 23, 2004 for mental health evaluation and treatment. Dr. Shine testified that Respondent presently suffers from Psychotic Disorder, Not Otherwise Specified ("NOS"). According to Dr. Shine, his diagnosis is based upon his review of Respondent's medical records and cental file, his past history, evaluations and observations of Respondent, and consultations with other medical personnel. Dr. Shine's colleagues concur in his diagnosis. The Court finds that Dr. Shine is a credible witness, based on both his expertise[1] and understanding of Respondent's psychiatric history.

Dr. Shine's January 24, 2005 Mental Health Evaluation[2] reflects that Respondent did not evidence bizarre behavior or paranoid ideation until he suffered a Traumatic Brain Injury ("TBI") in June 2003 while

---

[1]     The parties stipulated to Dr. Shine's qualification and background and the Court accepted him as an expert in the field of psychiatry. Dr. Shine's curriculum vitae was accepted into evidence as Government's Exhibit 1.

[2]     Dr. Shine's report was entered into evidence as Government's Exhibit 2 without objection. Respondent's medical records and central file were not introduced into evidence. Dr. Shine testified, however, that he reviewed both sets of records as part of his evaluation.

incarcerated at Federal Correctional Institution ("FCI") Victorville. Dr. Shine testified that Respondent's records reflect that he exhibited bizarre behavior three days prior to his TBI. On June 3, 2003, Respondent complained of a racing heart but he refused an EKG because his medical doctor was not present. Respondent then began to experience increased anxiety, irritability, and bizarre behavior such as "feeling the walls of the cell" and "standing over top of his cell mate while he slept." On the morning of June 4, 2003, he told a Physician's Assistant ("PA") that he was fine, but an hour later the PA noticed that the lights in his cell were off, and that he was crawling on the floor hitting his head, mouth, and chin several times. Records reflect Respondent's mouth was bleeding and he had urinated on himself. According to the PA, Respondent then stood up straight, looked at the PA, and made himself fall backward, hitting the back of his head on the floor. His teeth were broken, and he was taken to the health services area, where he was observed to be conscious, coherent, alert and oriented.

After Respondent was transferred back to his cell, he made himself fall back and hit his head again. He later appeared to be in a catatonic state, and his thumb was twitching. Because Respondent was unconscious and unresponsive, he was transferred to a hospital. He was subsequently transferred to FMC Rochester for medical care. After medical treatment was competed in December 2003, Respondent returned to FCI Victorville. On April 16, 2004, he was transferred to FMC Fort Worth.

While at FMC Forth Worth, Respondent assaulted a staff member. Based on his account of the incident, staff members concluded that his psychotic symptoms likely contributed to the assault. On September 23, 2004, Respondent was transferred to FMC Rochester due to his increasing psychosis, paranoid ideation, intensity, and inability to relate to others interpersonally and function in his current living environment.

Dr. Shine testified that since Respondent's return to FMC Rochester, he has exhibited symptoms consistent with Psychotic Disorder NOS. Respondent has reported hallucinations, and medical personnel have observed him suffering from delusions that are grandiose and persecutory in nature. Dr. Shine noted that Respondent is at times agitated, disorganized, confrontational, and argumentative with staff and other inmates. He does not have appropriate interpersonal relationships with others due to his persistent and intense grandiose and persecutory delusional thoughts. He has limited insight into the nature of his illness. Dr. Shine testified that Respondent was not able to function in the general population at FMC Rochester due to his mental illness. He is currently housed in the open section of the psychiatric wing at FMC Rochester.

Although Respondent does not have a history of mental illness, and the cause of his illness appears to be from his TBI, Dr. Shine noted that approximately 10 to 20 percent of people who suffer from a TBI eventually experience some form of mental illness. It is therefore not unusual that Respondent would experience an onset of psychotic behavior after his head injury.

Against this background, the Court finds, based on Dr. Shine's testimony and the records before the Court, that Respondent is suffering from a mental disease or defect.

### B. Respondent is in Need of Custody for Care of Treatment

Although 18 U.S.C. § 4245(d) does not define when a prisoner is "in need of custody for care or treatment," courts have found that prisoners are "in need" of treatment under 18 U.S.C. § 4245 where a diagnosis is properly supported by psychological and psychiatric testimony. Horne, 955 F. Supp. at 1146; United States v. Eckerson, 299 F.3d 913, 914 (8th Cir. 2002)(applying the legal standard for determining when an inmate is in need of treatment adopted in Horne).

5

"[I]f a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, . . . treatment is needed within the meaning of 18 U.S.C. § 4245." Horne, 955 F. Supp. at 1149. A finding of dangerousness, however, is not required. United States v. Akere, 14 Fed. Appx. 292, 293-94 (4th Cir. 2001)(finding no support in 18 U.S.C. § 4245 or the court's precedent for the proposition that the inmate could not be committed to a mental health facility without a finding of dangerousness). Deeming an inmate in "need of treatment" is appropriate where that inmate is unable to function in the general population of a prison because of a mental disease or defect. Horne, 955 F. Supp. at 1149.

Here, it is Dr. Shine's opinion that Respondent is in need of treatment and that it will be more than merely beneficial. In support of that opinion, Dr. Shine testified that, without treatment, it is more than likely that Respondent will deteriorate. Based on the records and testimony introduced at the April 13, 2005 hearing, the Court concurs with the opinions expressed by Dr. Shine. The Court concludes, therefore, that Respondent is in need of custody for care and treatment.

    **C.    FMC Rochester is a Suitable Facility**

The Court finds that FMC Rochester is a suitable facility for Respondent to receive care or treatment. FMC Rochester is a fully accredited hospital providing a wide range of medical and therapeutic options for incarcerated inmates. Dr. Shine testified that Respondent could not get the medical attention that he needs at a regular prison facility and that Respondent's prognosis is good with the types of treatment offered at FMC Rochester. Dr. Shine also testified that FMC Rochester expects to open a neuropsychiatry facility later this year, and that Respondent will benefit from the treatment provided by such a facility. There having been no evidence offered to contradict this testimony, this Court recommends that

Respondent receive his care and treatment at FMC Rochester.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted;

2. Respondent is found to be suffering from a mental disease or defect for the treatment of which he is in need of hospitalization in a suitable psychiatric facility;

3. FMC Rochester is a suitable facility at which to treat Respondent's mental illness;

4. Respondent be committed to the custody of the United States Attorney General; and

5. The Attorney General hospitalize Respondent at FMC Rochester.


Dated: May 11, 2005


                                                      __s/ Arthur J. Boylan_____
                                                     ARTHUR J. BOYLAN
                                                     United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before May 25, 2005 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.